Citibank. This case requires the court to address three federal laws, the Federal Arbitration Act, the Servicemembers Civil Relief Act, and the Military Lending Act, to determine whether and how the Arbitration Act's protection of arbitration contracts has been overridden by either of the two other statutes. The Start Citibank deeply respects the nation's servicemembers, honors their service, and it's gone above and beyond the law in protecting them from credit card interest rates and penalties, and denies the allegations in the complaint. But the issues before the court today are entirely legal. And I'd like to start, if I may, with... I have not... I appreciate your recognition of that, but I had not thought that this case would challenge rights, positive or negative, for the military. It just changes... It's an issue of forum. It is, Your Honor. It's an issue of what we think are the substantive protections that the FAA provides to arbitration agreements. We're assuming the military will still get there. I think the rights and the individualized relief that are promised in those statutes are the same whether they're in court or in arbitration. Your Honor is exactly right. So starting with the Relief Act, the question here is whether it overrides the FAA. And the Supreme Court has repeatedly held that parties arguing that the FAA has been displaced by another statute bear a very, very heavy burden because of the strong interest in giving effect to both laws. And plaintiffs can't carry that burden here. And second, even if they could, the law doesn't apply to their credit card agreements and the arbitration agreements they contain, because those agreements were entered into before the enactment of the law and under the Landgraf analysis. That law is not retroactive. So I'd like to begin, if I may, with the first point... If it's not retroactive, what does it mean, notwithstanding any previous agreement to the contrary? We think that... That sounds pretty retro, backward-looking to me. Well, I think that that kind of language is pretty common in the arbitration context, because usually arbitration prohibitions of arbitration agreements and forcibility are about pre-dispute arbitration. So it's about arbitration agreements entered into before the dispute arises. And so we think in this context, that's what prior agreement means. It means an agreement that was entered into before the dispute arose. And what that provision is saying is that outside the arbitration context, that kind of agreement that prohibits waivers of class actions would not be enforceable. So we think that's the logical reading. And we think it certainly... At most, it's ambiguous, an ambiguity. It creates a little bit of a different problem. I don't know if either side said it, but that provision addresses only class actions under Rule 23. And it does not address arbitration. So the question is, if there's an arbitration that prohibits class actions, the most could be argued that the arbitration would have to be a class action arbitration. But that argument is not being made. It's basically, we're focusing on arbitration. Now, if it doesn't prohibit arbitration, but only prohibits class actions, then the question is, we're in arbitration and what rules do we apply? What clauses do we apply to determine scope arbitration? And it seems to me the FAA would require us to apply the contractual language. But... We agree, Your Honor. Your Honor is addressing the antecedent question. Does the Relief Act displace the FAA? And we think for the reasons that Your Honor just gave, it doesn't say a word about arbitration. The provision at issue starts in a civil action. And as Your Honor said, the subsection, the paragraph about class waivers refers to the federal rules. The civil action and the reference to the federal rules indicates pretty strongly that this is about waivers that apply to class actions in court. It doesn't have anything to do with arbitration. And we think that means that the arbitration agreement is enforceable according to its terms. And that, therefore, the term that prohibits class procedures is enforceable. And the term that says if a party seeks arbitration with respect to the dispute, that's enforceable. The Supreme Court addressed that very question in the EPIC systems decision. The argument there was that the National Labor Relations Act precluded class waivers in arbitration with respect to certain kinds of claims. And the Supreme Court there said that because class waivers, individualized adjudication, is a critical element of arbitration, that displacing that would displace the FAA. And that in the absence of that, the full arbitration agreement is enforced. So. The amendment entitles the plaintiffs to some form of class relief. I mean, but the arbitration agreement prohibited that. So, I mean, which controls? Well, I think the question that has to be decided is, I think the FAA controls. And the FAA would, putting the relief act to one side for one moment, the FAA would say that the arbitration agreement is enforced according to its terms. And so there's no class proceedings. And so I think. To include a later statement by Congress clearly saying that they have a right to class actions? Well, I think what they're saying is in the context of cases that are in court, it doesn't deal at all with arbitration we submit. In the context of places in court, a waiver that is not in an arbitration clause, and as we discuss in our briefs, there are a number of contracts that have what we call naked class waivers. They're not in connection with arbitration. They just say the parties cannot assert class actions. We think that's what Congress was aiming at here. And the language is certainly not specific enough to override the FAA because the Supreme Court and CompuCredit and Epic Systems has been very, very clear that it's an extremely heavy burden to override the FAA. And that to do that, basically the court has rejected any argument and has indicated in both of those opinions that the way Congress does that, if it wants to, is to specifically mention arbitration. And it didn't do that here. It did do it several years later in the sexual harassment statute that it passed. It specifically talked about both arbitration and class waivers. And so we think the answer to the first question here is the arbitration agreement is enforced according to its terms because this provision only applies to naked class waivers that are not in the arbitration context but just say you can't bring class action in court. Assume you're wrong. What do you say about the retroactivity issue? I think the critical distinction between the cases that my friends on the other side rely on, including Hamdan, is that those didn't involve contractual provisions. Here we have a contract provision that specifically protects, that calls out for arbitration, and we have a specific federal statute that protects that provision. So we think that is a dramatic difference from cases that just involve the question of whether a change in procedural law doesn't involve anything codified in a contract applies retroactively. Courts have generally said yes, that those generally may. But here we have a contract provision calling for arbitration, calling for individualized dispute resolution, and we think the retroactivity issue is whether that contract provision can be overridden. And so we think that's a totally different case from Hamdan and the other cases that our friends cite. Just to underline the case about the contract provision, I think the reason the existence of the contract provision is so important is that that's what Landgraf calls out as sort of a critical protection. And that's what's present here. And as I say, critical also is that Congress thought these contract provisions were so important that it designed a statute specifically to protect them. So we think that makes clear this is a substantive right, it's a contractually protected right, and something that the very tough standard of Landgraf would have to be satisfied to override it. And there's really no serious argument here. As Judge Bell said, asked the question about the any previous contract, we think at most that's ambiguous. We don't even think it's ambiguous, but at most it's ambiguous. And in this court's Jack Horrig case, it's that ambiguous language is not enough to satisfy the Landgraf standard. What do we do with the non-SCR? We think there's no serious argument that the non-SCR claims could be affected by this provision. Again, the provision that my friends rely on says in a civil action, it then talks about the specific kinds of relief in the first two subparagraphs, the specific kinds of relief that are available in SCRA cases, and then it has this class action and class action there with specifying the elements of the cause of action in court under the SCRA. And so to say that that could apply outside the SCRA context, we think there's no basis for it. The few cases that have done that, that my friends rely on based on the sexual harassment statute, rely on very different language. They talk about a case, that language talks about a case very different than in a civil action. Well, it seems to me a more powerful argument is if you read the section, it says any person aggrieved by a violation of this chapter may, in a civil action, one, two, and three. And so if you're filing a civil action, one, two, and three apply. But that has nothing to do with arbitration with the thing. And so it's basically saying in three that in a civil action, you can't waive the class action. They can bring a rule to 23 class action. But the operative language is above. It has it laid out, may in a civil action dash, and then it has one, two, and three. Everything is restricted to in a civil action. We totally agree, Your Honor. And the Supreme Court in the CompuCredit opinion discussed this and explained that it's commonplace for statutes to specify, create civil causes of action and to describe the details, and that that kind of language couldn't possibly be sufficient to displace the FAA, the court said, because it The court has basically said you almost have to say explicitly that arbitration is overruled because the arbitration act exists, and you don't imply one act over another. You read them harmoniously, and they pointed out in their epic case, what, half a dozen cases, statutes that were suggested that there's no arbitration. Still, there's arbitration. I think you're absolutely right, Your Honor. And in both the epic case you referred to and in CompuCredit, the court said, Congress knows how to overrule, to displace the FAA if it wants to, and that's by specific, and the examples that it gave were specifically mentioning arbitration. So I think the court has been, as you say, very clear on this. I'd like to So your argument is essentially that the arbitration agreement has prevented class action in any form, because by agreement, you can't bring class action in arbitration. And you're saying that the Service Members Act doesn't allow them to take it to federal court. That's exactly right, Your Honor, and that was the holding of the Supreme Court in Concepcion, where it first discussed this question of the FAA's protection of class waivers, and we talk about the Cruz and Conniff cases that followed up on that and said there would be argument was made, oh, in Concepcion, maybe the Supreme Court just said you can't bring class proceedings in arbitration, but you could still bring class proceedings in court, and both of those courts rejected that argument and said, no, the provision of the arbitration agreement, two provisions are enforced. One is the provision that says no class proceedings, but the other is the provision that says disputes will be resolved if one party asks in arbitration. So those two provisions combine, and that create the result that Your Honor referred to, and it's something that the Supreme Court again reaffirmed in the Epic Systems case, where the argument also was made, gee, if the arbitration agreement precludes class proceedings, then it must be that class proceedings are allowed in court, and the court squarely rejected that argument. I'd like to turn, if I can, to the MLA argument, because I think that statute is a little complicated, and I wonder if I can just say there, DOD reportedly, repeatedly said in conjunction with the promulgation of the regulation that credit card opening is the relevant moment for determining MLA coverage, and that that determination applies for the life of the account, and the accounts here were opened prior to the MLA applying to credit cards, and therefore it doesn't apply here, and I think it's obvious why the Secretary said you can make a life of the account determination at account opening, because the system would be totally unworkable if that didn't happen. So I think the effective date provision is 32 CFR 232.13. It says notwithstanding the new broader definition of credit that the DOD adopted, until October 3, 2017, consumer credit does not mean credit extended in a credit card account. All of these accounts were opened prior to 2017, so we think that's dispositive, and the argument of my friends on the other side depends entirely on the proposition that a credit card account not covered by the MLA when it was opened will somehow become credit subject to the MLA based on subsequent use of the card, but that's the precise interpretation that the Secretary repeatedly rejected. We have those statements in our opening brief on pages 57 to 60, and it would be unworkable and unfair, and I think something in the regulation that makes clear that the Secretary didn't intend to do that is the critical safe harbor provision, because the safe harbor provision says that a credit card issuer can determine at account opening the status and that that determination will apply for the life of the account, but the safe harbor provision critically can't be used with respect to accounts that existed prior to the MLA's effective date, because the relevant provision, 232.5B3, says that only at the time a consumer applies to establish the account or 30 days prior to that time can the credit card issuer use the DOD database to make that conclusive determination, and if the Secretary thought that pre-effective date accounts could become subject to the MLA, certainly he would have provided the safe harbor. He did not. Thank you. Ms. Nichols, I guess you're first. Good afternoon, and may it please the Court. My name is Leah Nichols, and I represent the Service Member Appellees. Under the plain text of Section 4042 of the SCRA, the class action waiver in Citibank's agreement is not enforceable, and the District Court's decision should be affirmed, but even if this Court disagrees in full or in part, none of the Service Member's claims can be compelled into arbitration under Section 987 of the Military Lending Act. Beginning with the SCRA, I want to address a point that Citibank brought up just here, which is that, implying that because the text of the statute talks about a civil action. It doesn't talk about, it authorizes only in a civil action. It says you may, in a civil action, have those things, and then if that weren't clear, Rule 23 does not apply to arbitrations. Rule 23 is a federal rule that applies in civil actions. Your Honor, with regard to that first part, in a civil action, the problem with the argument of saying, okay, well, it says you may in a civil action, and then saying, well, everything under that can be displaced by, you know, it's Not displaced. It authorizes, if you file a civil action, dash, one, two, and three. So those one, two, and three are subservient to that part of that sentence. You may, in a civil action, do A, B, or C, or it's actually one, two, or three. And it seems to me it's providing a remedy of a civil action, and in that civil action, you can do these things. But there's nowhere that it says it prohibits arbitration. Now, arbitration is not a class action. Arbitration is a contract to arbitrate, and under the terms of the arbitration, they don't have, don't resolve issues on, with class proceedings. But there are no rules. Rule 323 doesn't apply to arbitration. Absolutely. We agree, Your Honor. But I want to start with this idea that because it says you may in a civil action, and then it lists the remedies. If the idea is nothing under there applies Why do they put that in? In other words, one, two, and three are relating to when you file a civil action. Yes, Your Honor. But here's a situation. A lot of different statutes use that language. So for example, in Gilmer, the ADA began with the same exact phrase. Any person grieved by a violation of this chapter may in a civil action. And the Supreme Court did not say, well, because there's an arbitration agreement, everything under there disappears. That is not what The Supreme Court would address this totally differently. The Supreme Court would say we have two congressional statutes, the FAA and the SCRA, and they would say one does not overrule the other. And this does not even purport, doesn't even mention the word arbitration to overrule the other, and the Supreme Court has required some explicitness. So it seems to me you read the two together, and every time they've done that, every time they have allowed the arbitration to go ahead. And there's a list of cases in EPIC where they've done that, and it's a goodly list. Your Honor, I want to parse out sort of two different things that are going on and two different arguments. That's what the Supreme Court would rule on. I'm just suggesting that when a statute provides remedies in a civil action, it doesn't suggest it's providing remedies in arbitration or in some other mechanism, mediation or some other mechanism where the claim is brought. It says when it's in a civil action, it's A, B, and C. But I'd suggest the bigger picture is the Supreme Court's effort to harmonize FAA and every other statute. And it says there's nothing to indicate that the FAA is to play a lesser role. As a matter of fact, they suggest that the FAA has been given a robust role. Your Honor, I agree there's two separate points. With regard to the first point, I think that's incorrect because the remedies that are available after a civil action are still available in arbitration. There would be no private right of action if there were an arbitration agreement if that were true. The rights in Gilmer under the statute would not apply in arbitration if that were true. So I think that's not how we can read the statute. I think it's directly contrary to what the Supreme Court said in Gilmer, which involved the exact same statutory language. 4042 prohibits arbitration? Yes. Tell me what word addresses arbitration. Your Honor, it says, well, let me back up. What it says is you have the right to bring a class action. No, don't go to the class action because we're talking about a bigger picture. We're talking about what forum you're in, not what type of proceeding. What forum are you in? You're either in a contractual arbitration or you're in court. Now, the question is, can you, does this prohibit you from going out of court and resolving it in arbitration? And the answer is clearly no. Your Honor. What it does, your argument is it prohibits class actions since the arbitration clause has a class proceedings limitation. It therefore applies. The most you can get out of that is that the arbitration clause should be modified by this statute so you can't go with a class proceeding and do an individual, have a class proceeding in arbitration. That's a whole different issue. You're saying basically the arbitration clause should be modified by this. But that's a strange bird because it doesn't address arbitration contracts, modifying them, number one. And number two, Rule 23 doesn't apply. And this clearly refers to class actions under Rule 23. Your Honor, what it says, it says you have the right to bring a class action and that cannot be waived by any previous agreement to the contrary. You win. So now we have an arbitration where there's a class proceeding. You haven't gained a thing. Your Honor, three responses to that point. One, there's an anti-severability clause in the arbitration agreement in this case. And so what the Citibank's anti-severability provision says is that if anything in the agreement is rendered unenforceable, including the class action waiver, then no arbitration at all. So in this case, that gets resolved. What does the exception clause say? Sorry? There's an exception clause to the severability clause. Right. There's an anti-severability clause in Citibank's provision. And what it says is it If it's declared invalid. Right. It says if any, it says if any aspect of the arbitration agreement is declared invalid. Why do you think this language says arbitration agreements cannot contain class proceedings? Because class proceedings are authorized here in federal court and they can't be waived in federal court. This provision says class waivers are not enforceable wherever they appear. It doesn't say wherever. It says It says It says civil action, number one. And number two, under Rule 23. It says in any previous agreement to the contrary. Oh, you're talking about the arbitration agreement. I was focusing on the statute. Right. Yeah. So it says, well, it says any, I mean, the statute says any previous agreement to the contrary. There's no limitation on that. And I want to be very clear, right? This happened, this provision was passed after AT&T versus Concepcion. So Congress was well aware that generally, you know, class waivers What I have is we have an FAA and we can argue what the FAA allows or doesn't allow after you get in arbitration. But you have two statutes, one that creates arbitration forum and the other creates, this one creates a civil action. This does not prohibit arbitration. It, under your argument, it prohibits class actions and it prohibits class action. So now you have to construe this provision that says prohibits class actions, that it means it prohibits arbitrations. And it doesn't say that. It says any agreement to the contrary. Now I want to, a couple of points I'd like to make. One, in terms of trying to harmonize these two statutes, right? Congress was well aware that not only are there standalone class waivers, but there are also class waivers in the context of arbitration agreements. And to say, well, okay, this provision is class actions in the traditional sense. They're class proceedings where they purport to represent non-individualized treatment. And the agreement basically wants to have individualized treatment. And of course, the Supreme Court addressed that whole issue, said, we abide by the terms of the contract. You can't invalidate it unless it's declared illegal. And this doesn't declare arbitration clauses illegal of any kind because the Supreme Court's expressly affirmed it. All right. I mean, our view, and I think, you know, it says any previous agreement includes any previous agreement. Now I want to go to the point about what the Supreme Court has done in Epic Systems and what this court has done in Lyons. So in Epic Systems, what the court said is that Congress overrides the general rule that arbitration agreements are enforceable when it, by explicitly identifying, quote, what rules should govern the adjudication of class or collect actions in court or arbitration? And does the statute mandate particular dispute resolution procedures that are inconsistent with arbitration? It said, you know, does, did Congress expressly depart from the usual rule that parties can contract to adjudicate claims differently? And Congress did exactly that in the SCRA. It meets all of the requirements that Congress said it had to meet in Epic Systems. And I think if we contrast the SCRA with the NLRA, which didn't specifically talk about class actions, it created no unwaivable right to bring a class action, which is what the SCRA did. These are very different statutes. Very different statutes. And for you to gain any ground, you have to suppose that the SCRA overruled a right to agree under the FAA in the manner that the arbitration agreement in this case provides. And the Supreme Court has said when two statutes stand side by side, we do not imply that one overrules the other unless it does so explicitly. And that's, unless you understand that under Epic or all the other decisions that they've had. They've been through this, you know, in half a dozen more cases. Yeah. Yeah. Your Honor, they've never said that the word arbitration is required, but I want to switch to this court's, looking at this court's decision in Lyons. In Lyons, PNC made a very similar argument to what Citibank makes here, which is that the particular provision at issue in Dodd-Frank in Lyons itself did not discuss arbitration at all. What it said is that we're not going to enforce an agreement that takes away the ability to bring your case in court. And this court looked at that and said, yeah, that's enough to, you know, that's a contrary congressional statement. And so this court follows its own reasoning in Lyons. I, we get to the same place. Now I want to. Now in Lyons, of course, it was ruled that there was no bar to bringing an action in a quote, appropriate district court of the United States, which is not language used in the, in the SCRA. Right. That's because the SCRA is focused on class actions. To be very clear, there's nothing in the SCRA that prohibits the enforcement of an arbitration agreement when the person is bringing individual claims. Right. So and so it's just doing a different, it's not looking at saying, oh, we want everything in court versus arbitration. It's saying we want class actions to be able to proceed. And so an agreement to arbitrate is absolutely enforceable in the context of the SCRA where there are only individual claims. And so Congress is just doing something a little bit different there. But I want to move on to the Military Lending Act if I might, because if you agree with, disagree with us in full or in part with regard to this, with regard to the SCRA, the district court's order denying Citibank's motion to compel arbitration should be affirmed for another reason as well. And that's because Section 987 of the Military Lending Act prohibits imposing or enforcing an agreement to arbitrate any quote, dispute involving the extension of consumer credit against the service member. Now there's no dispute here that the MLA is the contrary congressional command that displaces the usual enforcement of arbitration agreements. The dispute boils down to what is the use of a credit card to make a purchase and extension of credit? It is because the Supreme Court has said so in Kerner in the very analogous context of TILA, which also involves consumer lending. And what the Supreme Court said is interpreting the definition of credit under TILA and said, look, part of that definition includes incurring a debt and deferring its payment. And that is exactly what you do when you use a credit card to make a purchase. And so they're- The DOD regulations sort of define it otherwise, right? The definition of credit that the Supreme Court interpreted in Kerner is exactly the same as the definition of credit in the DOD regulations. There are some consumer credits a little bit different, but with regard to the definition of credit that Kerner is interpreting in TILA, it is exactly the same definition, word for word, that's in the DOD regulations. Not credit alone, extension of credit. Extension of credit is used exactly the same in TILA as it is in the Military Lending Act, not even in the regulations. But extending credit and extension of credit, Congress put in MLA, used the same exact phrase that was used in TILA. And obviously it can be presumed to know about the Supreme Court's interpretation in Kerner when it did that. And again, the definition of credit that the Supreme Court is interpreting is exactly the same in the DOD regulations as the definition is in TILA. And so if there are no further questions, I see I'm out of time. Thank you. Thank you. All right. We have an amicus. Mr. Wang. May it please the Court. Christopher Wang on behalf of the United States as an amicus supporting plaintiffs. In my limited time, I would like to address section 4042A3's text in the relevant precedent, but I'm happy to answer any other questions the panel may have. Section 4042A3's phrase, any previous agreement to the contrary, is read most naturally to encompass all previous agreements, including arbitration agreements, thus showing Congress's clear intent to... You start with a little clause in subpart three, but you have a statement up above which controls all three of them, may in a civil action. And then you have three things which you may do in a civil action. It's an authorizing statute. And then it says you can bring a class action, and not only that, you can't waive that class action, and it defines class action under Rule 23. And that's the full context. You can't just read any agreement. You got to read it in the fact it's in a civil action, and it's under Rule 23. Your Honor, I think Citibank's argument goes too far. Section 4042A provides a private right of action for aggrieved individuals to recover equitable and declaratory relief and monetary damages. Under Citibank's logic, a party could waive their ability to acquire such remedies through arbitration, which we believe is contrary to the Supreme Court's ruling in Viking Cruise Line, said a part... You think this section prohibits arbitration? We do. We do. What's the language you say precludes arbitration? Forget the class action. The phrase, notwithstanding any previous agreement to the contrary, we believe is broad enough to cover arbitration. I said that's a class action waiver. I'm saying let's assume, just hypothetically, that this arbitration agreement had nothing about class provision. It's an arbitration agreement that you have to arbitrate your claims. And does this statute prohibit arbitration? Well, this statute only applies to class actions. It does not apply to individualized... It does not just apply. It doesn't apply to individualized arbitration. It may bring a class action. Yes, it authorizes a class action. Does it prohibit arbitration? It does not. It prohibits arbitration in the context of a class action, not in the context of an individual. The hypothetical was, do we have an arbitration agreement that has no class proceedings provision in it? Now, does it prohibit arbitration in that circumstance? Your Honor, I haven't thought about that question just at first blush. I don't... The whole issue is whether the FAA applies or the SCMRA applies. We believe that the... This man has a claim under this statute and he has an arbitration agreement. Doesn't have any provision with respect to class actions. He just has an arbitration agreement. Doesn't he have to arbitrate? He has to arbitrate his individual claims. That's correct, but not his class. This carves out... And why is that not... Where in this statute doesn't prohibit that, does it? Well, it prohibits arbitration... Forcing an individual... Prohibiting an individual from bringing a class action in district court just for class actions. Of course, there's no class actions in arbitration, are there? Generally, no. Not in this particular arbitration. Not generally in any... Yes. I mean, it's a factual provision. And what some people have tried to do is to represent others in the arbitration. But Rule 23 doesn't apply there. I would say in most cases, most arbitration agreements have a prohibition on class-wide arbitration. But to go to Judge Floyd's point, we also think that Section 4042A3 does require that someone be able to bring a class action in some form. In that case, that's district court in this case because arbitration... So the claimant comes in and he says, I want to file a class action. And the defendant comes in and says, you have an arbitration agreement, no reference to class actions in the agreement, and ask the court to compel arbitration. You've agreed that that would proceed, right? If he wants to bring a class action, the SCRA says that he should... No, he says he wants to bring a class action. He files a class action and the defendant files a motion to arbitrate. And the arbitration agreement has no provision on class proceedings. And you've agreed that he has to arbitrate, right? Well, he has to arbitrate individuals. We believe that the SCRA is sufficiently broad to cover class actions to authorize him to bring a class action in district court. He's authorized to bring it. But if he signed a contract to say, I agree to arbitrate my individual claim or I'll bring a class proceeding in the arbitration, but you've agreed that the statute doesn't prohibit arbitration. It does not prohibit arbitration. If he chose to bring an individual claim, he would have to arbitrate it. Class actions are... Now your argument comes that he has to arbitrate because the FAA says he has to arbitrate and says it's irrevocable. And they have a bunch of adjectives about these agreements, very, very strong, which the Supreme Court has robustly interpreted. He now has to arbitrate. Now the whole question is, can he do it on a class basis and represent others or individually? And it seems to me that would be under the law of arbitration, the arbitration agreement, Supreme Court's decisions and so forth. But once you're in arbitration, if you're entitled to go to arbitration because the statute doesn't prohibit it, you sort of give away the ship, don't you? Well, Your Honor, we have a disagreement about whether the statute requires one to go to arbitration. Our entire point is that this phrase notwithstanding any previous... You're backpedaling. This man files a class action under the SCRRA. He has an arbitration agreement which makes no reference to class actions or class proceedings. It just says you agree to arbitrate. And you've agreed that the defendant can come in and enforce that agreement. Enforce it for individualized arbitration, not for the class action. Well, there is no class action on it. So you can enforce it. And he goes down to enforce it. And then he says, I want to file... I want to represent a whole class of people before the arbitration. And the arbitrator says, no, you can't do that. We don't have class proceedings here. What do you do then? I think the whole point of the section 4042A3 is to enable such a party to file a class action in district court. And once again, he has to meet all the requirements of Federal Rule of Civil Procedure 23, which are not insignificant. So, I mean, certainly there's a carve out, we believe, from the general policy favoring arbitration for class actions. There's a carve out for civil action in federal court under Rule 523. Yeah. Okay. Okay. Thank you. If the panel doesn't have any additional questions, I'll rest on the briefs. Thank you. Thank you, Your Honor. Just a few quick points. First of all, on the Relief Act issue. I think the Supreme Court did supply a roadmap. It's not the one my friends are talking about. In both CompuCredit and Epic Systems, it said Congress knows how to displace the FAA. It specifically refers to arbitration. We quote those on pages 9 to 10 of our reply brief. In this court's Lyons case, the word arbitration was in the heading of the provision, and that's something that the court actually relied on. I think it's significant here to the extent my friends are arguing that Congress couldn't possibly have wanted to draw this distinction between class waivers outside of arbitration and class waivers in arbitration, that the legislative history shows that the House passed a bill that had two provisions. It had this provision we're talking about, and it had banning pre-dispute arbitration. The final bill only had the class waiver provision. So Congress had before it an example of what has to be done to displace the FAA, and it just didn't do it. My friends make the argument that paragraphs 1 and 2 supply individualized remedies, and our argument would mean they don't have to be available in arbitration. Not true. The FAA doesn't displace individualized remedies. In fact, it requires that they individualized remedies be available in court. So that's with respect to the Relief Act. With respect to the MLA, I think my friend didn't mention the critical effective date provision that I mentioned, and I think the other thing that's important here is that the Secretary's regulations are not a carbon copy of TILA. The Secretary's not required to do that. Section 987H2E gives the Secretary the power to impose additional or different limitations. The regulation, the applicability section of the regulation, 232.2A1, the second sentence says nothing in this part applies to a credit transaction or account relating to a consumer who is not a covered borrower at the time he or she becomes obligated on a credit transaction or establishes an account for credit. Established an account for credit, obviously, is targeted at credit cards. My friends say, oh, but the obligated on a credit transaction provision must mean that every time you use your credit card, another determination has been made. But the Secretary's statements that specifically disavow that in the preamble to the regulation at 80 Federal Register of 43579 and note 168 on that page, specifically say, with respect to that provision, that the relevant language is establishes an account for credit cards. The other language, obligated on a credit transaction, was there before the Secretary added that second phrase specifically to address credit cards and specifically to make clear, as the safe harbor provision does, that a credit card issuer can make a life of the account determination at the time the card is opened. That's how the safe harbor works. And it has to work that way because disclosures and other obligations are triggered by the application of the MLA in addition to the prohibition on arbitration. And the Secretary recognized that credit card issuers need to have a time when they can be certain that it may apply or that it may not apply. And that's the purpose of that regulation. Thank you. All right. I think that covers everybody. We'll come down and Greek Council after we adjourn court for the day. This honorable court stands adjourned until this afternoon. God save the United States in this honorable court.
judges: Paul V. Niemeyer, Henry F. Floyd, Kenneth D. Bell